GARY M. RESTAINO
United States Attorney
District of Arizona

JOSEPH F. BOZDECH
California State Bar Number 303453
Assistant United States Attorney
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone: (602) 514-7500
Email: joseph.bozdech@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | |
|---|---|
| Plaintiff, | Case No. |
| v. | **VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** |
| Barrett Firearms Mfg. Co. 82A1 Rifle, Cal: 50 BMG, Serial Number: AA014647, | |
| Defendant *in Rem*. | |

Plaintiff United States of America brings this complaint and alleges as follows in accordance with Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

**BASIS FOR FORFEITURE**

1. This is a civil action *in rem*, brought to enforce the provisions of 18 U.S.C. § 924(d) for the forfeiture of a firearm involved in a violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A).

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction because the United States commenced this action and because this is an action for forfeiture. 28 U.S.C. §§ 1345, 1355(a).

3. The Court has *in rem* jurisdiction because acts or omissions giving rise to the forfeiture occurred in the District of Arizona, and because venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1395. 28 U.S.C. § 1355(b).

4. Venue is proper in this District because acts or omissions giving rise to forfeiture occurred in this District, and because the property is located in this District. 28 U.S.C. §§ 1355(b), 1395(a), (b).

## DEFENDANT IN REM

5. The Defendant *in Rem* consists of a Barrett Firearms Mfg. Co. 82A1 Rifle, Cal: 50 BMG, Serial Number: AA014647 ("defendant property").

6. The Alcohol, Tobacco, Firearms and Explosives ("ATF") seized the defendant property on December 28, 2023. The defendant property is currently in the custody of ATF.

## BACKGROUND

7. On December 27, 2023, ATF Special Agent Christian Villarruel ("SA Villarruel") received information regarding the prepaid purchase of the defendant property.

8. SA Villarruel learned from Federal Firearms Licensee ("FFL") Ammo AZ that Rocio Meza ("Meza") entered the firearms business on December 26, 2023 and attempted to purchase the defendant property.

9. According to the transaction details provided by the FFL, Meza paid a total of $10,860 in U.S. currency for the defendant property.

10. Ammo AZ was suspicious of Meza's attempted purchase because of the large amount of cash used to pay for the weapon, the type of gun she was trying to buy, and the gun's popularity with drug cartels in Mexico.

11. SA Villarruel knew through training and experience that individuals involved in firearms trafficking often purchase firearms with cash to avoid credit card transactions records and to conceal the identity of the eventual recipient.

12. SA Villarruel also knew through training and experience that guns like the defendant property are highly sought-after firearms by members of the Mexican Drug Trafficking Organizations ("MDTO") as they can be readily converted to belt-fed machine guns for use against the Mexican military, Mexican law enforcement, and rival MDTOs.

13. The Barrett M82A1 is a military-style weapon, and amongst the most powerful weapons a civilian can legally buy in the United States. Measuring about four feet long and weighing approximately 30 pounds, a Barrett M82A1 can be fired by well-trained shooters up to 2,000 yards with relative accuracy.

14. First sold in 1989, and known as an anti-material rifle - or a rifle utilized in battle to destroy enemy communications equipment, vehicles, weapons, and other heavy targets - the Barrett M82A1, in its many variations and types, has been utilized by numerous militaries in combat throughout the world, as well as law enforcement agencies, for over 30 years.

15. Meza left FFL Ammo AZ on December 26, 2023 without the defendant property. Ammo AZ told Meza she could pick up the firearm at a later date.

16. Prior to the transfer of a firearm from an FFL, a buyer must complete an ATF Form 4473 (Firearms Transaction Record). The FFL is required to keep a copy of the ATF Form 4473 in its records.

17. ATF Form 4473 requires the purchaser to provide information regarding his/her identity, and answer, among others, the following questions: (a) whether he/she is the actual transferee/buyer of the firearms (the form notifies the transferee/buyer that he/she is not the actual transferee/buyer if he/she is acquiring the firearm on behalf of another person); and (b) whether he/she has ever been convicted in any court of a felony or any other crime for which the judge could have imprisoned him/her for more than one year, even if he/she received a shorter sentence including probation.

18. ATF Form 4473 also requires the buyer to certify, among other things, (a) that his/her answers are true, correct and complete; (b) that he/she understands that

making false statements on the form is a crime; and (c) that he/she understands that if he/she answers in the affirmative to certain questions, including the question about having been convicted of a felony stated in paragraph 14(a) above, that he/she is prohibited from receiving or possessing a firearm.

19. Meza completed her ATF Form 4473 on December 26, 2023 for her purchase of the defendant property from FFL Ammo AZ.

20. On the ATF Form 4473, Meza identified her current address and state of residence as 11204 W. Calle De La Luna, Phoenix, AZ, 85037.

21. Meza answered "yes" to question 21a on the form which states, "Are you the actual transferee/buyer of all the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer any of the firearm(s) to you."

22. Meza signed her name in Block 22 of the ATF Form 4473 certifying that the information provided in the document was true, complete, and accurate.

## INVESTIGATION OF MEZA

23. Based upon the curious nature of Meza's cash purchase of the defendant property, SA Villarruel investigated Meza's background.

24. According to the Arizona Department of Economic Security, Meza made $22,133.61 in 2022 and $18,033.69 in 2023.

25. SA Villarruel knew through training and experience persons with limited income, such as Meza, typically cannot afford to purchase an item as expensive as the defendant property with cash - an item that cost approximately half of Meza's yearly salary for each of the past two years.

26. A query of Meza's phone number in an investigative data base showed that it was associated with a separate investigation involving the Drug Enforcement Administration ("DEA").

## SEIZUE OF THE DEFENDANT PROPERTY

27. On December 28, 2023, based upon Meza's unusually large cash purchase of the defendant property, her limited income, and her association with a separate drug-

related investigation, SA Villarruel and Homeland Security Investigations Special Agent Zimmer ("SA Zimmer") went to FFL Ammo AZ at 2005 W. Deer Valley Rd. #103, Phoenix, AZ 85027, and seized the defendant property before it could be transferred to Meza. *See Attachment 1.*

### INTERVIEW WITH MEZA AND HER FATHER

28. On December 28, 2023, SA Villarruel and SA Zimmer went to 11204 W. Calle De La Luna, Phoenix, AZ 85037 to speak to Meza. This was the same address Meza used on the ATF Form 4473 (Firearm Transaction Record) when she attempted to acquire the firearm.

29. Meza's father answered the front door and spoke to SA Villarruel and SA Zimmer. SA Villarruel showed his ATF credential and explained he was looking for Meza.

30. Meza's father said his daughter no longer lived there and had moved out approximately two months earlier. Meza's father provided Meza's phone number to SA Villarruel.

31. Using Meza's phone number, SA Villarruel contacted Meza, identified himself, and arranged a time to meet in person to discuss the defendant property. Meza agreed to meet during a work break.

32. Soon thereafter, the SAs met Meza at her workplace, presented her with their credentials, and asked her a series of questions.

33. Meza said she had moved about three months earlier to 5601 W. McDowell Rd., Unit #2086 in Phoenix, and was living in the apartment with her sister.

34. Meza said that she had purchased firearms in the last year other than the defendant property. She described buying a .45, but when asked if that was the caliber of the gun, she said she wasn't sure, and could only confirm that it was a pistol. She also could not recall the name of the place where she purchased the pistol, though she eventually confirmed that it was FFL Tombstone Tactical.

35. Meza said she purchased the pistol in October, kept it at her home, and took it shooting. Meza said she decided to buy the defendant property because she wanted something "stronger."

36. SA Villarruel told Meza that he wanted to ensure that she was being forthcoming and truthful with him as lying to the SAs could be considered a felony.

37. Meza said she purchased the defendant property for herself and no one else.

38. Meza said she knew the defendant property was a Barrett, though she did not know what model, how to assemble it, and was not sure where or how to shoot it.

39. Meza said she would need practice to assemble the gun. She also said she would need help from someone to learn how and where to shoot it.

40. Meza said she did not have a safe for the defendant property and would need to buy one.

41. Meza said she spent $10,860 in cash for the defendant property and had been saving up money for a year to do so. Meza said others gave her money too.

42. Meza said she had kept her savings at home, rather than in her bank account, and spent all of it on the defendant property.

43. When asked why she chose the Barrett, Meza said she had seen videos and decided she wanted one.

44. She said she looked at other firearms, but ultimately decided to get the Barrett.

45. SA Villarruel explained to Meza that the defendant property had been seized because she had broken federal law by falsely reporting on her ATF Form 4473 (Firearm Transaction Record) an address where she did not reside.

46. When questioned as to why she did not pay with a credit card instead of cash, Meza explained she already owed money on two credit cards.

47. Meza said she initially was saving money for a breast augmentation but later decided to buy the defendant property instead.

48. Meza said she goes to Mexico once a month.

49. When asked why she kept her money at home instead of in her bank account, Meza said she had a difficult time budgeting her money when she used the bank.

50. The SAs found Meza's responses unconvincing and consistent with that of a straw owner.

51. Typically, when someone invests a large amount of money in a weapon like the defendant property, they are gun enthusiasts with extensive knowledge of how to shoot and care for firearms.

52. Such gun aficionados also often purchase other items, such as ammunition, with their weapons.

53. By contrast, Meza knew little about the defendant property, such as its model name, let alone how to assemble and shoot it, or where she could legally do so.

54. Meza seemed similarly ignorant of the earlier pistol she bought as well.

55. It was also suspicious that Meza admitted to traveling to Mexico once a month, thereby disclosing a method and opportunity to traffic weapons outside of the United States.

56. Based on his training and experience, it appeared to SA Villarruel that Meza was a straw owner who illegally purchased the defendant property for a MDTO.

## ADMINISTRATIVE CLAIM BY MEZA

57. On April 6, 2024, ATF received an administrative claim from Meza.

58. Meza asserted that she was the owner of the defendant property and stated:

> "I am just a woman whose favorite sport is to be able to go shooting and to be able to listen and feel the force that different types of weapons have. Try to learn more about the different types of weapons and experiment with different types of calibers, feel and listen the strength that weapons have. I am a woman who has a great passion for weapons and more so those with high power that only tries to learn more about them, and have

7

the correct use and begin to have - collect an arsenal in the future. I am aware of the damage that these weapons can cause just as I am aware that I would never harm a person with any of them."

59. Meza also attached a copy of her receipt from Ammo AZ to her administrative claim.

60. Meza did not, however, provide any information or documents to show the source of the $10,860 in cash used to purchase the defendant property.

## SUMMARY

61. The defendant property is a firearm involved in a violation of providing materially false information to a Federal Firearms Licensee for the following reasons:

1. Meza providing a false address on her ATF Form 4473;
2. Meza paying $10,860 for the defendant property, or the equivalence of roughly half her yearly income;
3. Meza paying for the defendant property with cash;
4. Meza's ignorance regarding firearms in general, to include an inability to describe her earlier purchased pistol with specificity;
5. Meza's ignorance regarding the defendant property, admitting that she did not know its model, how to assemble it, how to shoot it, or where to shoot it;
6. Meza not having a safe for the defendant property;
7. Meza's connection to a DEA investigation;
8. The defendant property being a highly sought-after weapon of choice of MDTOs; and
9. Meza travelling to Mexico once a month.

# CLAIM FOR RELIEF

62. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 61 as those fully set forth herein.

63. The defendant *in rem* is subject to forfeiture pursuant to 18 U.S.C. § 924(d) as it is a firearm involved in a violation of providing materially false information to a Federal Firearms Licensee in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(A).

WHEREFORE, the United States of America prays that process issue for an arrest warrant *in rem* of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United Sates of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and property, together with the costs and disbursements of this action.

DATED this 2nd day of July 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*/S/ Joseph F. Bozdech*
JOSEPH F. BOZDECH
Assistant United States Attorney